JAMES O'BRIEN et al., Respondents, v. AUGUST HEMAN et al., Appellants.

St. Louis Court of Appeals, June 8, 1915.

1. MUNICIPAL CORPORATIONS: Existence of Public Alley: Dedication: Facts Stated.. The owner of land dedicated a strip thereof for an alley, twenty feet wide, running east and west and which was not connected at either end with a street or dedicated alley. There was a traveled way from the east end of this dedicated strip, running diagonally across a vacant lot to a street; and another landowner, in conveying his land, reserved a strip of land, ten feet wide, for a proposed alley, connecting with the west end of the dedicated strip, and running westwardly to a street, and the other owners of abutting land erected their fences and outbuildings so as to leave open a strip twenty feet wide from the west end of the dedicated strip to such street. As thus located, the alley had been open and used and traveled by the public for probably twenty years, and the city, although it had never improved the surface of the

alley, had laid a sewer main therein and had granted a tele-
phone company the right to extend its wires along the same.
*Held*, that the alley as thus located and created was not a mere
paper alley, but was a public alley, open for public travel; there
being an actual dedication by the owner who reserved the strip
for an alley and a common-law dedication by the owners who
constructed their fences and outbuildings so as to leave a strip
for an alley, and an acceptance thereof by the public by having
used and traveled it as a public way.

2. ————: **Injury to Pedestrian: Nuisance Adjacent to Alley:
Liability of Owner and Tenant.** Where the owner of abutting
property constructs and maintains a nuisance adjacent to a
highway, and lets the property in this condition, and the tenant
continues to maintain or suffer the nuisance as before, both the
landlord and the tenant are liable for injuries befalling one
passing along the highway as a result of such nuisance.

3. ————: ————: ————: ————. Where the owner of a lot
dug a quarry thereon, adjacent to a public alley, without guard-
ing it in any way, and allowed the side to cave in, so as to form
a dangerous chute from the alley into the quarry, and then let
the premises in that condition to a corporation, which main-
tained the nuisance, the owners and the tenant were both liable
for the death of a traveler in the alley, who fell into the quarry
through the chute.

4. ————: ————: ————: ————. Where the owner of a lot
dug a quarry thereon, adjacent to a public alley, without guard-
ing it in any way, and allowed the side to cave in, so as to form
a dangerous chute from the alley into the quarry, and then let
the premises in that condition to a corporation, which main-
tained the nuisance, and a traveler in the alley fell into the
quarry through the chute and was killed, the fact that a por-
tion of the chute extended across the corner of an adjoining
lot, before reaching the alley, so that the adjoining owner was
also liable, did not release the owners of the lot on which the
quarry was situated, or their tenant, from liability, since it was
their duty to protect against the nuisance created and main-
tained by them.

5. ————: ————: ————: **Evidence: Notice of Dangerous
Condition.** In an action against a lot owner for the death of
a child who, while walking in an alley, fell into a quarry, the
sides of which had been allowed to cave in, so as to encroach
on the alley, evidence that a policeman had requested the
owners to guard the place to prevent injuries to persons using
the alley was admissible to show notice to the lot owners of the
dangerous condition existing, notwithstanding the policeman
had no authority to make such request.

O'Brien v. Heman.

6. **APPELLATE PRACTICE:** Review of Findings: Rulings on Motion for New Trial. Where one of the grounds of a motion for a new trial was based on affidavits as to remarks of plaintiffs' counsel in opposing defendants' request for a directed verdict, which defendants claimed prejudiced the jury against them, and plaintiffs filed affidavits by all the jurors stating that they did not hear the remarks, which were addressed to the court in an undertone, the trial court's denial of the motion precluded a review of this matter, on appeal.

7. **DEATH BY WRONGFUL ACT:** Action by Parent: Damages. In an action by parents for the wrongful death of their child, loss of society of the deceased child is not an element of damages.

8. ————: ————: ————: Excessiveness of Verdict. A verdict for $4100, in favor of parents for the death of a twelve-year-old boy, who was bright and intelligent, and, although attending school, assisted his father some at his trade, was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

AFFIRMED.

*Rogers & Koerner* for appellant.

(1) The alley here in question existed merely on paper. It had never been thrown open to the public for travel. Hence, the city was under no duty to make it safe for travel; and neither owners nor occupants of private property adjoining same were required to guard places on their land which may have been dangerous. Hunter v. Weston, 111 Mo. 176; Baldwin v. Springfield, 141 Mo. 205; Downend v. Kansas City, 156 Mo. 60; Ely v. St. Louis, 181 Mo. 723; Conner v. Nevada, 188 Mo. 148; Benton v. St. Louis, 217 Mo. 687. (2) The owner of land upon which there is an excavation is under no duty to erect a fence between his property and adjoining private property. Overholt v. Vieths, 93 Mo. 422. Instruction c should, therefore, have been given. (3) A police officer has no authority

on behalf of the city to order a landowner to guard his property. The testimony of plaintiff's witness Carroll was, therefore, immaterial and incompetent and its admission was error. (4) The conduct and remarks of plaintiff's counsel while addressing the court in the presence and hearing of the jury upon the propriety of giving the peremptory instructions asked by defendants, were improper and prejudicial to defendants. (5) The verdict of the jury is without substantial evidence to support it. (6) The verdict is so grossly excessive as to indicate passion and prejudice on the part of the jury. It should, therefore, be set aside. Partello v. Railroad, 217 Mo. 645, 661. (7) An instruction on the measure of damages should not state that the amount of the verdict should not exceed the amount claimed in the petition. If it does so, the question of excessive damages arise, the probable effect of the instruction will be taken into account. Lessenden v. Mo. Pac. Ry., 238 Mo. 247, 265; Stid v. Mo. Pac. Ry., 236 Mo. 382, 405.

*Holland, Rutledge & Lashly* for respondents.

(This brief covers O'Brien v. Adding Machine Co., *post,* also.)

(1) The alley in question was a public alley, dedicated and accepted; but whatever the status of the alley as a public way or thoroughfare, the appellants are liable (a) whether it is a public alley with full obligations on the municipality to care for the same; (b) a public alley by common-law dedication, estopping these appellants from questioning the rights of the public therein; (c) a long used public passageway over the appellants' land, generally used by the public for many years with the consent of appellants, express or implied. (2) Where a strip of ground is dedicated by appellants' grantor twenty-one years before the

accident by a recorded plat approved by the proper city officers, and appellants soon after took deeds bounding the land by the alley and referring to the plat; where the city passes an ordinance for the construction of a sewer through the alley and contracts for its construction, and the sewer is laid and used; where the city grants permits to erect telephone poles through the alley and the poles were erected; its police officers notify appellants to fence their quarry because dangerous to persons passing through the alley and send a written report of such notice to the chief of police in whose office it was kept on file; where during all this time the alley was used by the public by vehicles and traffic of all kinds, including coal wagons and automobiles, and where there was a solid line of sheds and fence facing the alley on one side, which can be reached in no other way, said strip will be considered a public alley, although not actually paved by the city and even though for a small space leading to Spring avenue there was no dedication, but a continuous strip over the private line had been long used for a public passageway along with the alley. Benton v. St. Louis, 217 Mo. 687; Buesching v. Gas Light Co., 73 Mo. 219; Drimmel v. Kansas City, 180 Mo. App. 339; O'Malley v. Lexington, 99 Mo. App. 695; Baldwin v. Springfield, 141 Mo. 205; City of Caruthersville v. Huffman, 171 S. W. (Mo.) 323; 1 Wood on Nuisances (3 Ed.), sec. 120; Elliott on Roads and Streets (2 Ed.), secs. 152-3. (3) Even if the city had no obligation with reference to the repair of the alley, the facts stated in paragraph I constitute a common-law dedication and the acceptance of deeds by the appellants from the same grantor who made the dedication, bounding the property by the alley and referring to the plat of dedication of the alley, estop these appellants from claiming that this was not a public alley as far as they were concerned. There is no possible theory on which these appellants

191M.A.31

could have closed up the alley or shut the public out from it. Heitz v. City, 110 Mo. 624; Drimmel v. Kansas City, 180 Mo. App. 339; Ragan v. McCloy, 29 Mo. 356; Rose v. St. Charles, 49 Mo. 509; Railroad v. Baker, 183 Mo. 322; Field v. Mark, 125 Mo. l. c. 215; Brown v. Carthage, 128 Mo. l. c. 17; Downend v. Kansas City, 156 Mo. 60; McGrath v. Nevada, 188 Mo. l. c. 107; Bauman v. Boeckler, 119 Mo. l. c. 200. (4) If the so-called alley was a common public alley then the fee to the middle of the alley was in the appellants for the reason that appellants' grantor who dedicated the alley and conveyed the same to the city, thereafter sold the quarry property to appellants, describing it as bounded on the north by the alley, and any abandonment of the alley or failure of any kind to effect dedication gave the appellants an absolute fee to the center, they in any event owning the fee to the middle of the alley subject only to the right of the public to use the surface for passage. City of Memphis v. Miller, 78 Mo. App. 67; Baker v. City of St. Louis, 7 Mo. App. 432; Betz v. Telephone Co., 121 Mo. App. 476; Christian v. City of St. Louis, 128 Mo. 115. (5) If the alley in question was not a public alley then the fee belonged to the appellants and they owed to the public who had been using the property as a right-of-way for a long time, with the knowledge of the appellants, the duty of not leaving unguarded excavations and pitfalls in the pathway. Schaaf v. Basket & Box Co., 151 Mo. App. 35; Chicago Junction Ry. v. Reinhardt, 139 Ill. App. 53; affirmed in 235 Ill. 576; Graves v. Thomas, 95 Ind. 361; Wheeler v. St. Joseph Stockyards & Terminal Co., 66 Mo. App. 260; Beck v. Carter, 68 N. Y. 283; Hanson v. Land & Water Co., 58 Wash. 6; Brinilson v. Chicago, Etc., R. R. Co., 144 Wis. 614; Matthews v. Seaboard Air Line Ry. Co. (S. Car.), 65 L. R. A. 286; Phipps v. Oregon, etc., Navigation Co., 161 Fed. 376; DeTarr v. Brewing Co., 61 Pac. (Kan.) 689; Allison v. Haner, 62 S. W. 932;

Rooney v. Woolworth, 61 Atl. 366. On the same principle this obligation would rest upon the abutting property owners owning the fee to the middle of the alley, which was a public alley in all respects, but as to which the city had not accepted the obligation to repair. (6) An unguarded excavation near or extending into a public highway or a much traveled way used by the public is a nuisance for the maintenance of which all are liable who are responsible for its condition. Buesching v. Gas Light Co., 73 Mo. 228, and cases cited; Wiggin v. St. Louis, 135 Mo. 558; 1 Thompson, Negligence, secs. 945, 1228; Mathews v. Mo. Pac. Ry. Co., 26 Mo. App. 75; 29 Cyc. 1172; Loth v. Columbia Theatre Co., 197 Mo. 328; Bassett v. St. Joseph, 53 Mo. 290; Benton v. St. Louis, 248 Mo. 98. (7) Having tried their case upon one theory in the court below, appellants will not be heard upon another one here. Point II in appellant Burrough's brief is inconsistent with the instructions offered by it at the trial. Walker v. Owen, 79 Mo. 563; St. Louis v. Wright Contracting Co., 210 Mo. 491; Brier v. Bank, 225 Mo. 673; Koshkonong v. Boak, 173 Mo. App. 310; Dice v. Hamilton, 178 Mo. 81; Black v. Mo. Pac. Ry. Co., 172 Mo. 177. (8) Appellant's instruction number VI assumes the way in question to be a public alley. In that instruction the jury is informed "before you can find for plaintiffs, you must find and believe from the evidence that the public alley at the point where plaintiff's claim Francis slipped, was in such a dangerous condition that persons exercising ordinary care for their own safety could not have safely passed passed along the same." This commits appellants on the public character of the alley. (9) The Hemans cannot escape liability by claiming that if the Burroughs Company had fenced its land so as to guard this hole, the boy would not have fallen into their quarry, and the Burroughs Company cannot escape by claiming that if the Hemans had walled up their quarry,

the boy would not have fallen beyond their land. The
law of this State is well settled that if the negligence
of two tort feasors combines to cause an injury, or if
the accident would not have happened but for the con-
curring negligence of both parties, there can be a re-
covery against either or both, since the responsibility
for a tort is several. Bassett v. St. Joseph, 53 Mo.
290; Hutchinson v. Richmond Safety Gate Co., 247
Mo. 71; Clark v. St. Jo., Etc., Ry. Co., 242 Mo. 570;
The Joseph B. Thomas, 81 Fed. 578; City of Flora v.
Pruett, 81 Ill. App. 161; Benton v. St. Louis, 248 Mo.
98; Pearce v. Kansas City, 156 Mo. 230; Newcomb v.
Railroad, 169 Mo. 409; Vogelsang v. St. Louis, 139 Mo.
127. (10) If the owner lets premises with a nuisance
upon them and the tenant allows it to remain they
are both liable; the owner for creating it and both for
not guarding it. Buesching v. Gas Light Co., 73 Mo.
219; Grogan v. Foundry Co., 87 Mo. 321; Mathews v.
Ry. Co., 26 Mo. 75. (11) The parents are not limited
to the value of services which might have been rendered
by the child, but may recover in tort, upon the
right which the child would have had if he had been
injured and survived. Under the statute the damages
should be left to the sound discretion of the jury. Hen-
nesy v. Brewing Co., 145 Mo. 104; Proctor v. Railroad,
64 Mo. 112; O'Hara v. Gas Light Co., 131 Mo. App.
428; Sharp v. National Biscuit Co., 179 Mo. 559; Lee
v. Knapp & Co., 155 Mo. 610.

NORTONI, J.—This is a suit under the wrongful
death statute for damages accrued to plaintiffs because
of the fault of the several defendants. Plaintiffs re-
covered and defendants prosecute the appeal.

Defendants are August Heman, John C. Heman,
the Heman Construction Company, a corporation, and
the Burroughs Adding Machine Company, a corpora-
tion. The Hemans and the Construction Company
prosecute a separate appeal jointly, while the Bur-

roughs Adding Machine Company does likewise. Such distinct appeals will, therefore, be considered separately, but, in the interest of brevity, the same statement of facts will be employed to portray the general outline of the case. Such facts as are relevant and essential to the understanding of the arguments presented in the different appeals will sufficiently appear in the opinion concerning each.

Plaintiffs, the father and mother of Francis O'Brien, sued, as above stated, for damages occasioned as the result of his death, which occurred by his falling from an alley into the rock quarry situate on the property of the Hemans, but the immediate opening through which he was precipitated into the quarry was across the corner of a lot owned by defendant Burroughs Adding Machine Company which adjoined the Hemans. The several defendants are, therefore, sued as joint *tortfeasors* in rendering the highway dangerous, as if each contributed in part to the death of the little boy.

We copy from plaintiffs' brief the statement of facts prepared by their counsel, which sufficiently sets forth the situation as to both appeals.

"There is very little conflict of testimony presented by the record in this case. The facts shown by respondents were, that on the 9th day of August, 1912, the minor child of plaintiffs, a boy named Francis O'Brien, aged twelve years, slipped into the quarry owned and operated by the Hemans, appellants here, and was drowned. At the time of the fatal accident the boy was walking eastwardly in the alley, which is between Laclede avenue and Forest Park boulevard, two public streets in a populous center in the central district of the city of St. Louis, Missouri.

"The alley in question is one hundred and eighty-two feet north of Forest Park boulevard and one hundred and eighty-two feet south of Laclede avenue, running parallel with both streets, and is built up

solidly on the north line by a row of sheds and fences inclosing the rear of a solid block of flat buildings facing Laclede avenue. Also on the north side of the alley, some seventy-five feet east of the quarry, was the factory building of the Johansen Bros. Shoe Company, where a force of from four hundred to five hundred workers were employed daily. Across the alley from these sheds and this line of fences the Hemans excavated to a depth of about one hundred and fifty feet, operating a quarry for several years, and, the quarry business having been terminated some time prior to the accident, they were at the time using it as a public dumping hole, for which they charged a fee for dumpage by the load, and for the convenience of which they had erected platforms upon the east and west side of the quarry. Having quarried up to the alley line, the north wall of the quarry presented a perpendicular surface of solid rock, on top of which the soil had slid into the hole in the process of time and through the beating and washing of rains, so that the line upon the surface representing the northernmost edge of the incline was nine feet and four inches into the alley, which, as dedicated and laid out, was twenty feet wide. Along that line the Hemans had erected a rude-two-plank fence, beginning at the west wall of the quarry and running east to a point three and one-half feet west of their eastern line and terminating with the last post eleven feet west of a point where the corner had washed into the quarry.

"The northeast corner of the quarry and all of the eastern side of the quarry were exposed and were not fenced or guarded in any way.

"At said northeast corner the ground had caved in in such a manner as to form a sharp incline or chute or slide, as it was variously called by the witnesses, into which it appeared the residents of the neighborhood had been accustomed, for many years, with the knowledge of the Hemans and without any

objection from them, to dump ashes and refuse. This chute ran at a sharp angle in a southwesterly direction to a point where it attained the corner of the perpendicular rock wall of the quarry proper and then dropped straight down to the water constituting the quarry pond. The hole was about one hundred and fifty feet deep, the water about sixty-five feet deep.

"Along the two-plank fence erected by the Hemans, and principally on the quarry side thereof, had grown grass, high weeds, sunflowers and vines overhanging the edge of the quarry-hole and having their branches and leaves protruding over and through the fence into the alley. Also along the row of fence and sheds, on the northern boundary of the alley, grass had grown several inches high. In the floor of the alley, where wagons traveled, were packed dirt, ashes and imbedded rocks.

"The alley was dedicated by the recording of a plat in the office of the recorder of deeds in the year 1892, and in May of that year the Board of Public Improvements certified to the fact that the dedication of said alley was in due and legal form and accepted the same.

"The defendant August Heman acquired his interest in the quarry property, which was an undivided one-half, on January 5, 1894, from the same person who had dedicated this alley and filed the plat of dedication above mentioned. In deeding the property to Mr. Heman it was described and the title conveyed: 'to an alley twenty feet wide, bounded north by said alley.' This deed referred to the recorded plat which had been accepted by the city two years before. The other undivided half interest in this property was acquired by John C. Heman in 1896, by deed from the same grantor, and similarly described the northern boundary of the property. A short time thereafter the property immediately to the east of the Hemans' property, and contiguous to the same alley,

was purchased by the Burroughs Adding Machine Company, and was similarly described and bounded in the deed. The business of operating the quarry, and thereafter of operating the dumping-hole, was conducted by the appellant Heman Construction Company, a corporation composed of the two Heman brothers, and Mr. August Heman, when called to the stand, testified on the point of use and occupation of the premises, as well as the operation of the quarry and the dumping-hole, as follows:

" 'Q. Who dug the quarry-hole this testimony is about? A. Heman Construction Company. Q. With your and Mr. Heman's knowledge and consent—Mr. John Heman? A. Yes, sir. Q. After the rock was quarried out of it, what did you use it for? A. Use it as a dump. Q. How long have you been using it as dump? A. About three years, I guess. Q. Did you hire it as a dump? A. Well, I don't know what you mean by the term "hire." Charge so much to let them dump in there, that is all. Q. Has the Heman Construction Company got a written lease? A. No, sir. Q. Just operate it by consent of you and your brother? A. Yes, sir. Q. It was your and your brother's enterprise and this corporation carried it on? A. Yes, sir. Q. During all the time taking out and filling in, too? A. Yes, sir.'

"The alley was dedicated more than twenty years before, and was used, according to the testimony, during that time and for more than ten years, as a driveway and public alley. The fence and line of sheds marking the north line of the alley was in direct line with the fence and line of sheds continuing westwardly on the other side of Spring avenue. Delivery wagons, express wagons, coal wagons, rag men, automobiles and wagons going and coming from the Johansen Bros. Shoe Company's factory, which was situated north of the alley and some seventy-five or one hundred feet further east of the quarry hole, were accustomed to

drive up and down the alley, and had been for many years, according to the testimony of all the witnesses in this case, with the sole exception of Mr. August Heman, who expressed himself as 'surprised' at the great volume of testimony which he heard to this effect.

"In 1907 the city of St. Louis granted permission to the Bell Telephone Company to erect seven poles on the north side of the alley, and at that time an investigation and recommendation was made with reference to the granting of this franchise by the City Lighting Department of St. Louis. These poles were thereupon erected and a telephone line is at present located in the alley and by virtue of that permission from the city.

"In 1894 the city of St. Louis established, by ordinance, a sewer district in this territory, and thereafter let a contract and laid a sewer main in the alley past the point where the boy fell into the quarry. The evidence showed that there was a portion of the alley running east from Spring avenue a distance of ninety-three feet which had never been dedicated by any recorded plat, but that it was defined between the sheds and fence line, and the property contiguous to it was bought and sold with its lines for a boundary and the public had used it for many years the same as it had used that part of the alley which had been formally dedicated. In fact, appellant August Heman himself formerly owned and at one time sold the property contiguous to that strip and in his deed conveyed and described the property on the south as 'bounded on the north by a proposed alley twenty feet wide.'

"East of the quarry the alley had been dedicated straight through and connected with a north and south alley which was one hundred and twenty feet west of Grand avenue; but the property to the south of this alley, and to the west of the north and south alley just mentioned, being vacant, the public became accus-

tomed to travel diagonally across the lots and had left said eastern part of the alley untraveled for a distance of about one hundred and fifty feet west of the north and south alley, at which point it was again joined by the diagonal roadway, and constantly used. Just east of the last post of the Heman fence, so-called, the chute or slide, heretofore alluded to, had worn so far out into the floor of the alley as to be north of the fence line and was cut or scooped out to a distance extending more than one-half the width of the alley.

"At the time of the accident, parties in the neighborhood having cut their lawns, had brought the lawn grass and weeds, together with other rubbish, and thrown it into the mouth of this hole. The result was that the heavier articles of refuse had slid down into the quarry, while the grass and weeds had adhered and remained in the mouth of the chute and upon the floor of the alley around it in such manner as to make it impossible for any one to tell where the slide itself began.

"This twelve-year-old boy, coming east from Spring avenue up the alley, with a companion a year or so younger, was walking near the two-plank fence on the quarry side, and as he passed the post at the end of the fence, stepped upon the lawn grass and weeds by which the mouth of this chute was concealed. The grass slipped from under his feet and he slid into the quarry, either being killed by the fall or drowned before he could be rescued. His body was recovered the same day from the bottom of the quarry pond.

"The evidence showed that the mouth of this chute extended further east than the Hemans' property and was, in fact, about eight feet over the line of the Burroughs Adding Machine Company in the alley contiguous to that company's property. According to the testimony of two surveyors offered by plaintiff, the boy, in his descent, first slid over property which was in the alley, then over property owned by the Bur-

roughs Adding Machine Company, thence into the quarry owned, dug, operated and maintained by the two Hemans and the Heman Construction Company. The witnesses who saw the boy suddenly slip into the quarry testified that the hole was so concealed by the grass surrounding it that no one who was not perfectly familiar with the situation would be able to tell that there was any chute at the point where the boy slipped; four witnesess testifying to the effect that the boy seemed to be utterly oblivious to any danger, but walked straight along the alley until he stepped upon the grass surrounding this hole, and that he instantly disappeared as though the earth had swallowed him up.

"The evidence further showed that a police officer had notified Mr. Heman more than a year before the accident that this corner was dangerous and that some one was likely to slip into it and that Mr. Heman had at that time taken the position that the dangerous corner referred to was further east than his property extended and that it was the duty of the Burroughs Adding Machine Company to fence and guard the point. Thereupon the officer went to the Burroughs Adding Machine Company with the same complaint, receiving a promise from them that they 'would look it up.'

"The dispute between appellants as to whose line the hole was upon, which began at that time, was maintained throughout the trial and is carried into this court by the briefs of counsel. The plaintiffs below offered no instructions, except upon the measure of damages and the definition of 'ordinary care' as applied to children and minors.

"The appellants offered and the court gave fourteen instructions, one of them limiting the measure of recovery under plaintiffs' instructions and the other thirteen setting out and defining defendants' theories of defenses.

"The jury returned a verdict for $4100.

O'Brien v. Heman.

"Upon the filing of motions for new trial, appellants filed certain affidavits, being those of August Heman and counsel for each of appellants, with reference to arguments made to the court on the question of demurrers to the evidence at the close of plaintiffs' case, which, according to the affidavits were made in the presence and hearing of the jury and were highly prejudicial to the jury. Respondents, however, immediately thereafter filed the affidavits of all twelve of the jurors, of the clerk in the court room where the cause was tried, and of the reporter who took the stenographic notes of the proceedings, to the effect that no argument was made within the hearing of the jury; that the jurors did not hear the arguments, and that they deemed the discussion which was carried on in an undertone to be that of legal questions with which they were not concerned. Neither did the memory of the trial judge coincide with the statements made in Mr. Heman's affidavit and the motions for new trial were overruled."

The accompanying photographs portray the condition of the alley, and one of them, in part, that of the quarry mentioned in the evidence. However, the condition of the quarry has changed in the interim, in that it appears to have been largely filled in after the accident and before the photograph was taken, but nevertheless it reveals the slide referred to in the evidence which commences in the alley, crosses the corner of the Burroughs Adding Machine property and penetrates into the quarry of the Hemans.

EXHIBIT 5.

Looking south west at mouth of slide with X made by witness showing point where boy stepped and slid into quarry

EXHIBIT 6.

Looking north east at slide and quarry wall, showing dumping platform and water.

EXHIBIT 7.

The evidence is, that the alley, though traveled and used by the public generally, had never been improved under the authority of the city—that is, paved —and it continued in a state of nature, except for the traveled wagon road and pathway through it. Then, too, it appears the west end of the alley as platted did not intercept any public street, but concluded ninety-three feet east of Spring avenue, and the east end—that is, some distance east of the quarry—was obstructed by a shed attached to the barn of Scruggs, Vandervoort and Barney. In view of these facts, it is earnestly argued that the alley was a paper alley only and may not be regarded a public way of the city, as was declared in Hunter v. Weston, 111 Mo. 176, 19 S. W. 1098. But it is clear the authority relied upon is without influence here, for there the alley involved had never been open, was inclosed by a wall at either end and merely existed on the paper plat, while in the instant case it is otherwise.

The alley involved here was platted as early as 1892, and it appears that it has been open to the public ever after. On the east, it connected with a north and south public alley shortly west of Grand avenue, but it is true a shed was built across it by an adjoining proprietor so as to obstruct the east outlet thereof into the north and south alley. But the lot of ground adjacent was vacant and the public travel through the alley merely turned south of the shed and passed into Forest Park boulevard by that route, which appears to be well marked. It is true, too, that the west end of the alley, as platted, did not intercept a public street, for it terminated on the plat ninety-three feet east of Spring avenue, but many years ago the alley was actually opened clear through to the westward, so as to connect with Spring avenue, an important public thoroughfare north and south. Indeed, the defendant, August Heman, in conveying the land west of the quarry and east of Spring avenue, reserved in the deed

ten feet for a proposed alley, continuing the alley north of the quarry directly west to Spring avenue. It appears the adjoining proprietors on either side of this ninety-three foot space erected their fences and outhouses leaving open a twenty-foot alley way from the west end of the alley originally platted to Spring avenue. Thus, for probably twenty years, according to the evidence, the alley has been open and has been used and traveled by the public from Spring avenue eastward across the ninety-three-foot space, which was not originally platted, then upon the platted alley way along the north side of the quarry, and also the Burroughs Adding Machine Company lot, which lies immediately east of the quarry and then over the roadway to the south of the shed across a vacant lot to Forest Park boulevard.

Many years ago, the city constructed a sewer in the alley and thus exercised authority over it; likewise it granted public service corporations a franchise to erect their poles and pass their lines through the same. Although it be true that the ninety-three-foot portion of the alley as now existing—that is, as marked by the fences and adjoining structures—was not originally platted, a common-law dedication on the part of the adjoining proprietors with respect to the ten feet on the north side sufficiently appears, and defendant August Heman actually dedicated by deed ten feet from his land theretofore conveyed on the south side of that strip, by expressly reserving it in the deed as a proposed alley. The public at large accepted this dedication, both of that portion involved in the original plat and the portion so dedicated by Mr. Heman and other proprietors lying between Spring avenue and the alley originally platted, for they have used and traveled it continuously as a public way during all of these years.

The record abounds with evidence of public use of the alley, not only by those driving and

191MA32

passing through it, but by the acts of the city officers in exercising authority over it above indicated as well. In such circumstances, it is entirely clear that the alley was a public one and open for public travel. Plaintiff's son is, therefore, entitled to be regarded as an invitee in a public way at the time of his death. [See Benton v. City of St. Louis, 217 Mo. 687, 118 S. W. 418.]

It appears that defendants August and John C. Heman owned and operated the quarry adjacent to the alley and that it was about one hundred and fifty feet in depth. In the quarry it is said the water was sixty-five feet in depth. It is true the quarry was in possession of the Heman Construction Company, who had formerly worked it, and this company was a corporation owned by its codefendants, August and John C. Heman. No retaining walls had been constructed on either the north side of the quarry or at the northeast corner, where the dangerous runway, or slide, appears, and several feet of the alleyway had caved therein—that is, about nine feet, it is said. This condition, it appears, had obtained for several years. Indeed, the quarry was a dangerous place and had been threatening to those who passed through the alley for years prior to the Hemans giving possession over to the Heman Construction Company. Plaintiffs' son, while passing through the alley at the south side of the traveled way, stepped upon an accumulation of green grass that had been tossed from adjoining lots into the runway, which opened in the alley immediately adjacent, but a few feet east of the northwest corner of the lot of the Burroughs Adding Machine Company, and was precipitated a few feet across the corner of such lot into the quarry, where he came to his death through drowning in the pond at the bottom.

No one can doubt that if the owner of abutting property constructs and maintains a nuisance adjacent to the highway and lets such property in this condition —that is, with the nuisance thereon—as the Hemans

did to their construction company, and such tenant continues to maintain or suffer the nuisance as before, both the proprietor and the tenant are liable for such injuries as may befall one passing along the highway, as a result of their negligence in omitting to exercise ordinary care to guard or render secure the passage. [See Buesching v. Gaslight Co., 73 Mo. 219; Grogan v. Broadway, etc. Co., 87 Mo. 321; 1 Thompson on Negligence, section 1159.] Although it be true that the place where plaintiff's little boy fell into the slide, or runway, was in the alley northeast of the corner of the Heman quarry and adjacent to the lots of the Burroughs Adding Machine Company, these defendants, the Hemans, are not relieved of liability on that score, for they created and, in conjunction with their tenant, the construction company, maintained the nuisance adjacent to the highway. Such being true, the mere fact that an obligation to fence the highway at the precise point where the boy stepped into the runway rested upon the adjoining proprietor—that is, the Adding Machine Company—is wholly immaterial here; for it devolved upon these defendants to protect against the nuisance created and maintained by them. [See Wettor v. Dunk, 4 Fos. & F. 298.]

It appears that the police officer on the beat discovered the danger which inhered in the situation a year before, and called the attention of Mr. August Heman to the same, with a request that he guard against injuries because of it, to persons using the alley. It is argued the court erred in admitting this evidence, for it is said a policeman is without authority to give direction to owners as to what should be done with respect to their private property. The proposition thus stated may be conceded as generally true, but, nevertheless, the evidence was entirely competent and proper, for it tended to show notice of the condition of defendants so as to suggest precaution to pro-

tect against such damages that might have been anticipated as within the range of reasonable probability.

It is argued the jury were prejudiced by remarks and arguments adduced by plaintiffs' counsel to the court when defendants interposed their request for a peremptory instruction and the judgment should be reversed because of this. Obviously this argument is wholly without merit, for it appears to have been tried out as a question of fact before the court on the motion for a new trial and resolved against defendants. Whatever the purport of the remarks of counsel and the argument directed to the court at the time, the jurors, each and all, say in their affidavits filed in support of the verdict that they did not hear them. The remarks, it appears, were addressed to the court in a low tone and the jurors say they paid no attention to them and did not hear what is said to have been an ''impassioned appeal,'' or any of the statements made by counsel, in urging the court to refuse the peremptory instruction. The court had these affidavits before it and overruled the motion for a new trial, and this concludes the matter here.

It is argued the verdict of $4100 is excessive. Plaintiffs' son was aged twelve years and five months at the time of his death. It appears that he was a strong, robust, healthy boy, and exceedingly alert and intelligent. He was attending school regularly and gave promise of a bright future. His father was a mender of china and glassware by trade, and the boy assisted him in his avocation, but the parents intended to avail themselves of educational advantages to his benefit. It is true the parents are not permitted to recover for the loss of the society of the boy, and, in the instant case, judgment was given solely on the grounds of the loss of service. But though such be true, we are unable to say that $4100 is an excessive recovery, for no one can tell with any degree of precision that the earning capacity of such a boy be-

tween the ages of twelve years, five months and twenty-one years might not yield so much to the parents.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.

