## H. W. BENTON et ux. v. CITY OF ST. LOUIS, Appellant.

### Division One, February 28, 1913.

1. **SECOND APPEAL: Law of Case.** On a second appeal, where the facts are the same and the pleadings relating to those facts are the same as on the first appeal, the first decision becomes the law of the case on points ruled (except in exceptional and well-marked circumstances), and questions so settled will not be further noticed.

2. **NEGLIGENCE: Sink-Hole by Defective Sidewalk: Drowned Pedestrian: Notice of Rainfall.** Hard by a wobbly sidewalk, with loose boards, the converging water, caused to converge by the lay of the land, had dug a sink-hole five feet deep. A heavy rain, but not shown by the evidence to be so extraordinary as not to be expected in the natural order of things, had fallen on the day the seven-year-old boy fell into the hole, and had filled it brim full, and froth and straw had gathered close to the sidewalk and made it difficult to tell where the sidewalk left off and water began. The child was seen on the sidewalk going towards the hole, then a child's cry was heard, and his dead body was taken from the hole. *Held*, that permitting the sink-hole so close to an unguarded sidewalk, the insecurity of the sidewalk, and the absence of a rail or guard on the sidewalk at the place, all being of sufficient long standing to impart notice to the city, were all acts of negligence, and the court having submitted them as constituting defendant's liability, did not err in refusing to go further and require the jury to find, as a necessary condition to the city's liability, that it had notice of the water in the hole at that precise time, or the existence of such facts as amounted to notice of the water's presence. Although it be true that water in the sink-hole was the immediate cause of the child's death and the water had fallen on

the very day he was drowned, yet the city was not entitled to notice that it had fallen, for the other acts of negligence being present a reasonable man would have foreseen that the natural and necessary result of a heavy rain would be the filling of the sink-hole with water.

3. ————: **Touchstone: Foreseeing Injury.** An actionable wrong arises upon the failure to act with due foresight. A reasonable man can be guided only by a reasonable estimate of probabilities; but the omission to do something a reasonable man would do, or the doing of something a reasonable man would not do, guided by those considerations which ordinarily regulate the conduct of human affairs, is the touchstone of liability.

4. ————: ————: **Foreseeing: The Very Injury Complained of.** In cases of negligence, liability does not hinge on whether, by the exercise of reasonable prudence, the very injury complained of ought to have been foreseen. The party charged may be liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.

5. ————: **Extraordinary Rain: Commingled with Defendant's Negligence.** Where defendant's negligence contributes as one proximate cause to the injury, which would not have resulted from the act of God except for defendant's negligence thereto. contributing, defendant is liable. Where the city's negligent. acts commingled with the heavy rainfall, and the condition resulting from this commingling of negligence and storm caused the death of plaintiffs' seven-year-old boy, the court properly refused an instruction telling the jury to find for defendant city if they found from the evidence that his death was directly caused by an unusual or extraordinary rain, and would not have happened but for such rain.

6. **INSTRUCTION: Repetition.** It is not error to refuse to tell the jury the same thing twice.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Lambert E. Walther* and *William E. Baird* for appellant.

(1) Although at the time of an accident a sidewalk may be in a defective condition, yet, if the defect or dangerous condition arises from concurrent causes,

the city is not liable, unless it had notice of both of the causes in time to have remedied the defect. For this reason the court erred in giving the first instruction in behalf of the plaintiffs, to the effect that if the city knew, or by the exercise of reasonable care might have known, that the sidewalk was unprotected and the sink-hole was filled with water on the day in question, they should find for the plaintiffs; and this for the reason that there was no evidence that the city knew that the sink-hole was filled with water on that day, or had been so filled with water prior to that day, as to render the sidewalk dangerous. Fehlhauer v. St. Louis, 178 Mo. 635. (2) A municipality is required only to use reasonable care to make its sidewalks reasonably safe for pedestrians, and its liability does not extend to an anticipation of unusual or extraordinary circumstances. For this reason the court erred in refusing, under the evidence, to instruct the jury in accordance with the instruction 2, offered in behalf of the defendant. Elliot on Roads and Streets (2 Ed.), sec. 867; Fuchs v. St. Louis, 167 Mo. 620; Billings v. Worcester, 102 Mass. 329; Barton v. Syracuse, 36 N. Y. 54; Springfield v. Le Claire, 49 Ill. 476. (3) The court erred in refusing to give instruction 5 to the effect that the city could not be held liable unless the jury should believe that a person of ordinary care standing in the city's place would have considered the sidewalk dangerous and unsafe prior to the 4th day of May, 1905. Carvin v. St. Louis, 151 Mo. 334; Hesselbach v. St. Louis, 179 Mo. 505; Warren v. Independence, 153 Mo. 593.

*Collins, Barker & Britton* for respondents.

(1) Loose boards in a sidewalk, or a loose section of a sidewalk over and abutting upon an excavation, or a sidewalk passing over or immediately adjacent to a pit-fall not protected by guard rails, constitute a condition on which the jury must pass as to whether or not they, or anyone of such defects, are dangerous.

Gallagher v. Tipton, 152 Mo. App. 412; Meyers v. Kansas City, 108 Mo. 480; Buessling v. Gas Light Co., 73 Mo. 219; Wiggins v. St. Louis, 135 Mo. 558; Baldwin v. Springfield, 141 Mo. 205; Benton v. St. Louis, 217 Mo. 687; Rockford v. Russell, 9 Ill. App. 229; Day v. City, 91 Iowa, 45; White v. Boston, 122 Mass. 491; Pettingill v. Yonkers, 39 Hun, 449. (2) A very hard rain is not such an occurrence as to come within that class of events which are considered unprecedented or highly improbable. A special defense must be pleaded. Fuchs v. St. Louis, 167 Mo. 620; Brash v. St. Louis, 161 Mo. 433; Haney v. St. Louis, 94 Mo. 334; Woods v. Kansas City, 58 Mo. App. 272; Flint Walling Mfg. Co. v. Ball, 42 Mo. App. 504. (3) This court has held in this same case, under the same facts, on a prior hearing, that the facts pleaded and developed by the evidence constitute negligence and the doctrine of *res adjudicata* applies. Benton v. St. Louis, 217 Mo. 687; Mangold v. Bacon, 237 Mo. 496; Gracy v. St. Louis, 221 Mo. 1. (4) It is an unvarying rule in this State that when a proper instruction is given, it is not error to refuse another instruction upon the same subject, even though the instruction asked and refused, be a correct statement of the law. Richardson v. Railroad, 223 Mo. 342; Diel v. Ferguson, 158 Mo. App. 295; McMillen v. Eilder, 160 Mo. App. 407; State v. Rasco, 239 Mo. 538; State v. Gow, 235 Mo. 328.

LAMM, J.—This is a second appeal. See Benton v. St. Louis, 217 Mo. 687, for the first, where a full statement may be found.

Recovery is sought on the theory that on a street of defendant there was a wooden sidewalk; that close thereto in the street and extending under the sidewalk was a large, deep excavation, a sink-hole; that there was no rail on the sidewalk protecting travelers; that the sidewalk boards were loose and insecure, etc.; all of which facts were known to defendant or might have

been known by due diligence, etc. That the excavation was filled with water even with the sidewalk; that in the particulars aforesaid the street and sidewalk were in an unsafe condition and had been negligently allowed to remain in that condition; and that the infant son of plaintiffs, George, aged seven years, on a certain day in May, 1905, stepped or fell from the sidewalk into the excavation and was drowned.

When the case was here before, we held that the evidence made a case for the jury, provided the place was a public street. That contributory negligence could not be imputed to the infant as a matter of law. Moreover, that there was evidence from which the jury could have determined the controverted question of street or no street against defendant.

A nonsuit having been forced at the first trial because of the announced determination of the court to give an instruction in the nature of a demurrer to the evidence, we ruled that such demurrer would not lie.

When the case went down, defendant filed an amended answer. (Note: Up to that time it had stood on a general denial). Its amended answer was (1) a general denial, (2) a plea of contributory negligence on the part of the infant, and (3) the contributory negligence of the custodian of the infant, to-wit, the mother, Eva A., one of plaintiffs.

Verdict and judgment for plaintiffs for. $2250. Defendant appeals.

Any material facts not appearing in the first opinion that may be necessary to an understanding of propositions advanced by appellant on the second appeal, will appear in connection with the determination of those propositions in their order.

Second Appeal.

The general rule being that on second appeal, where the facts are the same and the pleadings relating to those facts are the same, the first decision becomes the law of the case on points ruled (except in excep-

tional and well-marked circumstances), we will not again notice questions so settled—the applicable maxims being: Concerning similars the judgment is the same; from similars to similars we are to proceed by the same rule; nothing in law is more intolerable than to rule a similar case by diverse law.

Indeed, as we gather, appellant does not endeavor to disturb or unsettle the rulings in the first case. It limits its assignment of error to the following propositions:

**Assignments.**

*First*: In giving plaintiffs' first instruction, because: Although the sidewalk or highway may have been in defective condition, yet if the defect or condition arose from concurrent causes the city is not liable unless it had notice of both causes in time to supply a remedy.

*Second*: In refusing defendant's second instruction, because: The city was only required to use reasonable care in making its sidewalks safe for pedestrians' and its liability is not extended to an anticipation of unusual or extraordinary circumstances.

*Third*: In refusing defendant's fifth instruction, because: Though a defect exist in a street the defective condition must appear to be dangerous before an action lies—this in the light of all the circumstances.

The facts being substantially the same on the second appeal as on the first and plaintiffs being entitled to the verdict of a jury, with the question of the contributory negligence of the infant set at rest in the first case, and, having got such verdict, we may state in passing that the question of the contributory negligence in the infant's mother and the question of street or no street were well submitted and found adversely to defendant. So much is impliedly confessed.

I. Plaintiffs' first instruction, being long, will not be reproduced. The part pertinent to our inquiry runs:

"  .  .  .  and if you further believe from the evidence that the said street and sidewalk were in a dangerous and defective condition, which was liable to occasion injury to persons in the usual and ordinary use of said street, and that this condition was known to defendant, or that said street had remained in such condition for a sufficient length of time before the death of the said George Benton to enable the officers and agents of the defendant, by the exercise of ordinary care, to discover said dangerous and defective condition and to remedy the same before said death, and if you further believe that the death of said George Benton was caused by the said dangerous and defective condition of said street and sidewalk; and if you further believe that the said George Benton was then and there in the exercise of the same care as is customarily exercised by persons of ordinary prudence of similar age and under like circumstances; then, if you so find the facts to be, your verdict must be for the plaintiffs."

In aid of the consideration of the criticism leveled by appellant at this instruction we reproduce the pertinent part of a photographic picture of the *locus,* put in evidence by defendant, thus:

The sink-hole was a natural drain.  At some un-
certain time a manhole or sewer's mouth was con-
structed, seen at the left side of the picture
**Facts.** hardby the sidewalk.  The lay of the land in the
region was such that storm water converged at this
manhole.  As we gather the erosion or eddy of this
storm water caused or helped to cause this sink-hole.
At some time the hole had been filled or partly filled by
the city and then the rush or whirl of the water of
some subsequent heavy rainfalls would wash another
sink-hole.  At the time in question the hole was, say,
five feet deep close to the sidewalk.  On the day the lad

drowned there had been a heavy rain. It was an extraordinary rain, but there was no evidence that such rains as this did not occur at intervals in St. Louis and were not to be expected in the natural order of things. The capacity of the manhole was not sufficient to carry such water away, and on the date in hand, as before in such rains, the hole was not only brimming full, but froth, straw, etc., gathered close to the sidewalk and made it difficult to tell where the edge was, that is, where water began and sidewalk left off. Not only so, but there was testimony some of the boards were loose, a whole section of the walk at the point was floating and, to use the phrase of the witnesses, "wobbly"—all of which was a chronic condition in heavy rains. But a short time before his death the little boy was seen on the sidewalk going towards this hole. Presently a child's cry was heard, and then his cap was found floating in the water and his dead body was taken from the hole.

Appellant's contention, as we get it, is that the boy's death came about from *concurrent* causes, viz., the loose and insecure boards, sink-hole and water. It is contended that the criticised instruction ignores the fact that before the city could be liable it should have notice not only of the insecure sidewalk, lack of railing and existence of sink-hole, *but of the water in the hole* at that precise time, or by the exercise of reasonable care could have known thereof in time to have remedied the defect, and that the proof was insufficient in that regard to support the instruction, since the water had fallen but a short time before the accident. Fehlhauer v. St. Louis, 178 Mo. 635, is relied on to support the point. But we do not agree to the contention.

In the Fehlhauer case plaintiff at a given time in the night fell into an open door in a sidewalk leading to a basement. A minute or so before she, so she said,

Notice of
Water in Hole.

had crossed the same door and found it closed; re-crossing it she fell through the door, opened by some one between her trips. It appeared that the cellar door was not usually open or used at that hour. But the use of it as an opening to the cellar was usually confined to a different time of the day to take in and carry out beer kegs. Having announced the proposition that the mere presence of a cellar door in a sidewalk was not a nuisance *per se* (a factor absent from our case) the non-liability of defendant was deduced from the proposition that it had no notice of the fact the door was open and no notice of a customary use of the door at that hour. It is clear, however, that if the woman, without her own fault, had fallen into the open cellar-way in a sidewalk at the time of day when the long-standing custom was to open the door to deliver beer into the basement and take out kegs, a different case on principle would have been before the court. This becomes at once apparent from an analysis of that case. Thus, speaking to the point (p. 650), the court said:

"Nevertheless it is contended that the city, by the exercise of reasonable care, could and ought to have known that the cellar door was open on this occasion from the manner in which it had been habitually used for a long time prior to the accident. Unfortunately for this contention, there is not a particle of evidence tending to prove that this cellar door was ever open at the time of night when this accident happened, or that it was ever opened before by the persons in the manner or for the purpose for which it was opened on this occasion." Again, further on (p. 651): "If the plaintiff in the exercise of ordinary care had fallen into the opening while the sidewalk was being subjected to this habitual use, then there might have been some support for the contention that the use itself afforded some reason to the city authorities for expecting such

a casualty, and the authorities cited in support of this contention might have some point.''

It is obvious there is no similarity in principle between the Fehlhauer case and the case at bar. In this case to permit the sink-hole so close to an

Acts of Negligence.

unguarded sidewalk was an act of negligence. The city had knowledge of the fact. Moreover, the insecurity of the sidewalk was of such standing as to impute notice. Another act of negligence. So, the absence of a rail or guard on the sidewalk at this excavation was of long standing. Another act of negligence, as abundantly shown by the cases cited by respondent and appearing in the reporter's headnotes to this opinion—e. g., Wiggin v. City of St. Louis, 135 Mo. 558. Indeed, that the absence of a guard or rail is reprehensible, in certain contingencies, was a fixed idea in very ancient times in the east where people in the cool of the night habitually slept on their housetops. ''When thou buildest a new house, then thou shalt make a battlement for thy roof, that thou bring not blood upon thine house, if any man fall from thence.'' [Deut. XXII: 8.] The modern idea of the necessity of guard rails on sidewalks along deep excavations may take root in that venerable law of Moses, for all I know.

As said, the claim of appellant is that the city did not actually know that the particular storm had actually filled that particular hole with that particular water. The thought being that because the testimony was that the rain had fallen shortly before the child was drowned, therefore the city was without notice and had no chance to remedy the specific defect that caused death, viz., water in the sink-hole. But is not that contention more specious than sound? Did not the city know that heavy rains might be expected to fall in the latitude of St. Louis? Did not it know that surface water, following the immutable law of nature, ran down hill? Know that the manhole was insuffi-

cient to carry such water off in heavy rains and that a pool was bound to gather at such times? Assuredly so; for where water has been in natural flow, it will go again if not prevented. Such pools had formed before in that sink-hole and were the natural and probable (nay, necessary) result of any heavy rain. Now, in the law of negligence if a reasonable man can foresee the probability of a given consequence, that fact is enough to spring liability; for what a man knows and what he should know are equivalent in law. The actionable wrong arises in "the failure to act with due foresight"—the omission to do something a prudent, reasonable man would do, or the doing of something which such a man would not do, "guided by those considerations which ordinarily regulate the conduct of human affairs," is the touchstone of liability.

The philosophy of the matter has been nowhere more happily stated than by Sir FREDERICK POLLOCK [Webb's Pollock on Torts (En. Am. Ed.), p. 45 et seq.], thus:

"Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every **Reasonable Man.** risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability. And the statement proposed, though not positively laid

down, in Greenland v. Chaplin (5 Ex. 248), namely, 'that a person is expected to anticipate and guard against all reasonable consequences, but that he is not, by the law of England, expected to anticipate and guard against that which no reasonable man would expect to occur,' appears to contain the only rule tenable on principle where the liability is founded solely on negligence. 'Mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated,' may be the ground of legal compensation under some rule of exceptional severity, and such rules, for various reasons, exist; but under an ordinary rule of due care and caution it cannot be taken into account.''

That pronouncement is the doctrine of this court. [Dean v. Railroad, 199 Mo. l. c. 409; American Brewing Ass'n v. Talbot, 141 Mo. l. c. 684, *et seq.*]

Another rule in point, is that, in cases of negligence, liability does not hinge on whether, by the exercise of reasonable prudence, the very injury complained of ought to have been foreseen. The party charged may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission. [Dean v. Railroad, 199 Mo. l. c. 411; Zeis v. Brewing Ass'n, 205 Mo. l. c. 651; Brady v. Railroad, 206 Mo. l. c. 537; Buckner v. Horse & Mule Co., 221 Mo. l. c. 710; Woodson v. Railroad, 224 Mo. l. c. 707.]

**Foreseeing Injury.**

In the light of those rules and authorities, when applied to the facts of this case, the instruction challenged must be held well enough and the criticism of it unsound. The point is ruled against appellant.

II. Appellant complains of the refusal of the following instruction:

"You are further instructed that the city is under no duty to provide against injuries of any character

arising from and directly due to unusual or extraordinary rains; and if the jury find and believe from the evidence that the death of plaintiff's son was directly caused by an unusual or extraordinary rain, and would not have happened but for such rain, then your verdict must be for the defendant.''

We think there is no substance in the assignment of error. There is no bone to be picked in a forum of reason with the abstract proposition that liability cannot be predicated of an injury resulting alone from the act of God, say, a bolt of lighting, a cyclone, a cloudburst, an earthquake. Nor can actionable damages be predicated of an injury entirely disconnected in cause and effect from the concurrent negligence of defendant and solely referable to any other form of *vis major* or *vis divina*. But the vice in the instruction is that it is not applicable to the facts of this record. Here there were acts of negligence on the part of the city commingling with the heavy rainfall and the condition resulting from this commingling of negligence and storm caused the death of George Benton. On principle it must be apparent where there is negligence which contributes as one proximate cause to the injury, which injury would not have resulted from the act of God, or from some chance case (*vel causus fortuitus*), except for defendant's negligence thereto contributing, defendant is liable. ' [Brash v. St. Louis, 161 Mo. l. c. 437, *et seq.*, and cases cited; Woods v. Kansas City, 58 Mo. App. 272; Bassett v. St. Joseph, 53 Mo. 290; Lore v. Am. Mfg. Co., 160 Mo. l. c. 626; Vogelgesang v. St. Louis, 139 Mo. l. c. 136.]

The assignment of error is not well taken.

III. The last proposition advanced by appellant is that it was error to refuse the following instruction:

''The court instructs the jury that the city cannot be held liable under any circumstances in this case, un-

*Act of God: Commingled With Negligence.*

Benton v. St. Louis.

less it is shown by the evidence that a person of ordinary care, standing in the city's place, would have considered the sidewalk dangerous and unsafe prior to the 4th day of May, 1905."

We take it this assignment of error is made inadvertently by learned counsel in overlooking a part of the record. Appellant has already asked and received the following instruction:

**Instruction: Repetition.**

"The court instructs the jury that the city cannot be held liable for failing to erect a railing along the sidewalk, unless they find and believe from the evidence that a person of ordinary care and prudence, in the city's place, would have erected such railing prior to the fourth day of May, 1905."

Those two instructions, if not *idem sonans,* are certainly *idem significans.* (The scholar who pursues with eagerness the subtleties of legal reasoning may profitably consult the brief *pro se* of Michael Sunday in Sunday v. State, 14 Mo. *417-18, for an edifying discussion, only faintly in point.) There could be no error in refusing to tell the jury the same thing twice. In writing instructions the finger of the judge is like that of fate in the figure of Omar Khayyam, anent progression, viz.:

"The Moving Finger writes; and having writ Moves on."

On the whole record the judgment was for the right party and stands for affirmance.

Let it be affirmed. It is so ordered. All concur.