MARY ROSE, (Plaintiff), Respondent, v. GUNN FRUIT COMPANY, LOUISE BIDDLE and KATHERINE BIDDLE BARRETT (Defendants), LOUISE BIDDLE and KATHERINE BIDDLE BARRETT, Appellants.

St. Louis Court of Appeals. Opinion Filed February 4, 1919.

1. **LANDLORD AND TENANT:** Negligence: Personal Injuries: Cellarway Opening in Sidewalk: Defective Cover: Violation of Ordinance: Municipal Corporations. In an action for personal injuries resulting from falling into an opening or cellarway in the sidewalk, evidence *held* to show that a strip of slats nailed together, which did not fit over the opening at all, flush with the street, but leaned at an angle against the wall of the building, leaving an opening on both sides thereof, was no compliance with Section 1292 of Article 12, of the Revised Code of the City of St. Louis (1912) whatsoever, and that this condition existed at the time of the letting to the lessee, and that it had existed for a great many years prior to the time at which plaintiff is said to have been injured.

2. ———: ———: ———; ———: ———: ———: Negligence of Landlord. In an action for personal injuries resulting from falling into an opening or cellarway in the sidewalk, the rule that where things, harmless in themselves, become dangerous merely by the manner of their use by a tenant, in possession, the landlord is not generally called upon to respond for injuries resulting from such use, does not apply where the evidence shows a violation of an ordinance by defendant owners, constituting negligence *per se.*

3. ———: ———: Maintenance of Nuisance on Sidewalk: Liability for Personal Injuries. Where the owner of the abutting property constructs and maintains a dangerous opening in the sidewalk which was a menace to pedestrians who might pass along the highway and constituted a nuisance, and left such property in this condition, and the tenant continues to maintain or suffer the nuisance as before, both the proprietor and the tenant may be liable for such injuries as may befall one passing along the highway, as a result of their negligence in omitting to exercise ordinary care to guard or render secure the passage.

4. ———: ———: ———: ———: Proximate Cause. Owners of premises are liable to respond in damages for injuries proximately resulting from their negligence in failing to comply with a city ordinance, whereby a dangerous condition was created and allowed to prevail in the sidewalk, constituting a nuisance, and which was adopted and maintained by their tenant; and in the case at bar the owner's can escape liability, if at all, only upon the ground that plaintiff's injuries did not proximately result from their negligence, but from the negligence alone of the tenant in failing to keep the opening covered or protected.

5. ———: ———: Concurring Negligence: Cellarway Opening in Sidewalk: Defective Cover: Personal Injuries: Evidence. Evidence reviewed and *held* that when all of the facts and circumstances of this case are considered, a jury could, with entire propriety, find the fact that the strip of slats was not in position above the opening was due to the negligence of the owners in failing to equip the place with a cover required by a city ordinance, reasonably safe and secure, and which could not be readily pushed or thrust aside, or that plaintiff's injury resulted, not alone from an intervening, independent cause, but from the negligence of the owners combined with an intervening cause, the result being one which should reasonably have been foreseen or anticipated by the owners as a thing likely to occur by reason of their original negligence.

6. ———: ———: Cellarway Opening in Sidewalk: Defective Cover: Violation of City Ordinance; Anticipation of Personal Injury. *Held,* that the owners ought reasonably to have foreseen or anticipated

that their negligence in leaving a deadly pitfall in the street, unprotected except by a light strip of slats leaning at an angle against the building, in flagrant violation of the ordinance, would be likely to result in injury of some character to one passing over this portion of the sidewalk, particularly at night.

7. ———: ———: ———: ———: ———: Liability of Owner of Premises: Question for the Jury. In an action against the owners of premises for personal injuries received by falling into an opening or cellarway from the sidewalk of a building, *held*, that the case made by plaintiff as against the owners, was one for the jury, and that the trial court consequently committed no error in refusing to peremptorily direct a verdict for appellants.

REYNOLDS, P. J., dissents from the above in a separate opinion filed, *holding* that the lessees, not the owners, were in possession and control of the premises at the time, and that it was the duty of the lessees, as a matter of law, to keep the premises free from a nuisance or traps to the unwary, and that the lease put the possession, care and control of the premises in the possession of the lessees, who are liable, not only under the terms of the lease, as implied, but by operation of law, for their maintenance in such a manner as not to create a nuisance, and for damages sustained by reason of failure so to do; and that the ordinance (Section 1292, R. C. 1912) has no application here.

8. ———: ———: ———: Injury to Third Person: Instructions. In an action for personal injuries resulting from falling into an opening or cellarway in the sidewalk, an instruction which told the jury that it was the duty of the owners to provide and maintain a covering over such opening, as required by the ordinance, and that if the jury found that they failed to do so and, as a direct result thereof, plaintiff was injured, then to find a verdict for plaintiff, *held* to be faulty, on the one hand, in thus commingling the duty of the landlords with that of the tenant or tenants, it fails, on the other hand, to require a finding of facts such as ought to be required in a case of this character, where it is sought to hold an owner liable for a nuisance, or a dangerous condition of this nature, existing at and prior to the time of the letting of the premises.

9. TRIAL PRACTICE: Instructions: Plaintiff's Faulty Instruction not Cured by Defendant's Instruction. An instruction given by the owners to the effect that though the cover did not comply with the ordinance, yet if the jury found that plaintiff's injuries, if any, resulted, not because said covering to said areaway failed to conform to the city ordinance, but solely because said covering

was left open by said lessee or some representative of the lessee in possession of the premises, or some other person other than the defendant owners, then to return a verdict for defendants did not serve to cure or render harmless the error in giving plaintiff's first instruction purporting to cover the whole case and directing a verdict.

10. **LANDLORD AND TENANT:** Instructions: Prejudicial Error. In an action against the owners of premises for injuries received by falling into an opening or cellarway in the sidewalk, an instruction erroneously commingling the duty of the landlord with that of the tenant or tenants and failing to require findings of fact necessary to establish the owner's liability, such as ought to be required where it is sought to hold an owner liable for a nuisance, of the dangerous condition existing at and prior to the time of the letting, *held* prejudicial error.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. K. Koerner,* Judge.

REVERSED AND REMANDED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.* for appellants.

(1) An abutting owner has the right to construct and maintain a cellar opening in the sidewalk and is not liable for injuries resulting to a passerby or to a visitor of the tenant or to anyone not connected with the property. If the premises become dangerous by the manner of its use by the tenant in possession the landlord is not liable for injuries resulting from such use. The right to construct the opening and to lease it out can be exercised without license from the municipality. Gilleland v. Railroad, 19 Mo. App. 412; Gordon v. Peltzer, 56 Mo. App. 412; Staelze v. Sweringen, 90 Mo. App. 588; Walter v. Donneby, 93 Mo. App. 7; Johnson v. Snow, 102 Mo. App. 238; Eyre v. Jordan, 111 Mo. 424 and cases cited from Illinois and N. Y.; Felhauer v. City, 178 Mo. 635; Kilroy v. St. Louis, 242 Mo. 79; Bender v. Weber, 250 Mo. 551; Young v. Kansas City, 27 Mo. App. 101; Hovelman v. Kansas City Horse Car Co., 79 Mo. 632; Haynes v.

Trenton, 108 Mo. 123; St. Louis v. Heitzehorg Packing Co., 141 Mo. 375. And an action of tort is not maintainable by the lessee for personal injuries suffered by him because of a breach by the landlord of his covenants. Glenn v. Hill, 210 Mo. 291; Korach v. Loeffel, 168 Mo. App. 414; Murphy v. Dee, 190 Mo. App. 83. (2) It is error to give contradictory instructions, and error in one part is not cured by a correct statement of the law in another part. Casey v. Steinmeyer, 7 Mo. App. 560; State v. Foley, 12 Mo. App. 436; Stone v. Hunt, 94 Mo. 480; Pim v. Transit Co., 108 Mo. App. 717; Flynn v. Transit Co., 113 Mo. App. 185. (3) The plaintiff herself was guilty of negligence and the damages assessed by the jury show prejudice and passion. King v. Wabash Railroad, 211 Mo. 1; Staelze v. Sweringen, 90 Mo. App. 588.

*Frank A. Habig* for respondent.

(1) (a) The owner or landlord's liabilities in respect to possession are in general suspended as soon as the tenant commences his occupation. But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord or owner is still liable notwithstanding the lease. Taylor, Landlord & Tenant (8 Ed.), sec. 174; Fehlhauer v. City, 178 Mo. 646; Buesching v. Gas Light Co., 93 Mo. 219; City v. Miller, 78 Mo. App. 67; O'Brien v. Heman, 191 Mo. App. 477, 499; O'Brien v. Burroughs, 191 Mo. App. 501, 506; Stoetzele v. Swearingen, 90 Mo. App. 588; Tate v. Railroad, 64 Mo. 155; Anderson v. Dickie, 1 Robertson 238; Shipley v. Fifty Assn., 101 Mass. 252-3-4; Earl v. Deask. 126 Iowa, 363; Timlin v. Standard Oil, 126 N. Y. 514; Gordon v. Peltzer, 56 Mo. App. 603; Benjamin v. Railway, 133 Mo. 291; Johnson v. Snow, 201 Mo. 450; Barr v. City, 121 Mo. 32; Kirkpatrick v. Knapp &

Co., 28 Mo. App. 431; Irwin v. K. C., 173 Mo. App. 711; Jegglin v. Roeder, 79 Mo. App. 434. (b) The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto, in any degree, whether large or small, is of no importance. It is immaterial how many others have been in fault, if the defendant's act was the efficient cause of the injury. Benjamin v. Railroad, 133 Mo. 291; Daneschocky v. Sieber, 195 Mo. App. 470; Barr v. City, 105 Mo. 557; Buckner v. Horse, Etc., 221 Mo. 710. (2) (a) Proof of ordinance and proof of failure to comply with same constitutes negligence *per se*. Ryan v. K. C., 232 Mo. 471, 485; Skinner v. Sifel, 55 Mo. App. 15; Perigo v. City, 185 Mo. 274. (b) Violation of this identical ordinance constitutes negligence. Perigo v. City, 185 Mo. 274. (c) Since plaintiff was relying on the ordinance, a finding that defendant had exercised a less degree of care than that which is imposed would not relieve him from liability for negligently failing to comply with the ordinance. Williamson v. Mulins, 180 S. W. 395. (3) (a) The instructions given by the court were not conflicting or misleading. (b) Where the verdict and judgment is for the right party, then error in an instruction given is not prejudicial. (4) (a) A pedestrian has the right to the full and free use of the entire width of the sidewalk to travel upon. Powers v. Penn, Etc., 91 Mo. App. 67. (b) And the sidewalk should be kept free from merchandise. Straub v. City, 175 Mo. 413; Walker v. K. C., 99 Mo. 652. (5) (a) An owner or landlord of a house is in contemplation of law for certain purposes always in possession, although it is actually occupied by his tenant. Kilroy v. St. Louis, 242 Mo. 86. (b) By failing to properly object before or at the trial, of the error complained of, defendant waives the objection. School District v. Wallace, 75 Mo. App. 322. (6) Plaintiff was not guilty of contributory negligence. Perigo v. City, 185 Mo. 274. (7) The damages were not excessive.

ALLEN, J.—This is an action to recover damages for personal injuries sustained by plaintiff, on December 17, 1912, by reason of falling into an opening or cellarway in the sidewalk on the north side of Carr Street, a public street in the city of St. Louis, in front of and adjoining a building and premises owned by the defendants Louise Biddle and Katherine Biddle Barrett on the northwest corner of Third and Carr Streets, and known as 1101-1105 Carr Street. The suit was instituted against Louise Biddle and Katherine Biddle Barrett as owners, and against the Gunn Fruit Company, a corporation, as the lessee of the premises. During the progress of the trial it appeared that the Gunn Fruit Company, having, in 1915, sold its business to another corporation, was no longer in existence. At the close of all the evidence in the case plaintiff dismissed the action as to said lessee. There was a verdict and judgment for plaintiff against the defendant owners, who have brought the case here by appeal.

The petition counts upon negligence on the part of the appellants in failing to provide said opening with a cover or grating of the character required by an ordinance of the city of St. Louis, being section 1292 of article 12 of the Revised Code of the city of St. Louis (1912). This ordinance, which appellants are charged to have violated, provides as follows:

"An opening in a paved sidewalk leading into an area or vault beneath or into a cellar shall be fitted with a wood or iron cover or grating set in flagging even with the surface of the sidewalk and said cover or grating shall have no lock, hinge, nor any fastening projecting above the sidewalk, and shall be secured in such manner as to prevent accident to any one passing over it. Any person who shall fail to comply with the provisions of this section, or who shall leave an opening in a sidewalk uncovered shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars nor more than one hundred dollars."

The evidence discloses that the appellants had owned the building and premises involved for a great many years prior to plaintiff's injury. In 1911 they leased the property to the Gunn Fruit Company and one Robertson and one Sommer who were interested in that corporation. At the time of plaintiff's injury the Gunn Fruit Company was occupying the premises under this lease, though Robertson and Sommer had assigned their interest in the leasehold to certain persons who had acquired their interest in the fruit company.

On the evening of December 17, 1912, plaintiff was on her way to her home from her place of employment nearby, and in passing over the sidewalk in front of this building, in a westerly direction, fell into an opening or cellarway in the north side of the walk adjacent to the building. This opening in the sidewalk, it is said, was about four and one-half feet in length, from north to south, and about four feet in width, surrounded by stone flagging or coping, and afforded access to the cellar or basement of the building by means of steps leading from the sidewalk. One witness, however, said that the opening extended only about three feet from the building, leaving about six feet of the sidewalk to the south thereof. The testimony shows that a porch extended from the building over this sidewalk. And at the time of plaintiff's injury the sidewalk was to some extent obstructed by Christmas trees placed along the south sides thereof and also, it is said, along the building at the north edge thereof. There is testimony for plaintiff tending to show that these trees obstructed a large portion of the sidewalk toward the curb, leaving a rather narrow passageway on the north side of the walk, but testimony for defendants tends to show that the trees at the outer edge of the sidewalk were, for the most part, in the street, and obstructed the sidewalk but little.

Plaintiff testified that it was 5:30 P. M. when she fell into the opening, and that it was then "very dark" at this place—so dark that she could not discern that

the opening existed; and that there was then no cover over this hole. From her testimony it appears that as she stepped into the opening she fell with her feet, or one foot, upon the steps leading into the basement, and that her body struck the west wall of the opening. The evidence shows that her injuries developed to be quite serious. She testified that she went to work on the following morning—but was unable to work all day because of her injuries—and that as she passed along this sidewalk she observed that above this opening there were then "boards over the sidewalk running up against the building."

A Mrs. Wishmeyer, who was with plaintiff at the time of her injury, i. e. was following her along the portion of this sidewalk unobstructed by trees, testified as to plaintiff's fall; that she saw no covering of any kind over this opening at the time; and that it was very dark at this place.

One Hilliard, who was secretary of the Gunn Fruit Company at the time of plaintiff's injury, was called as a witness for plaintiff. He identified the lease mentioned above, and it was introduced in evidence. He testified that this opening "had a cover over it, a kind of gate made of slats that would rest against the outside of the opening and lean up against the wall, covering the entire opening;" that it was removable, and that there was no wooden or iron cover set in flagging even with the surface of the sidewalk; that the opening was protected solely by these slats fastened together, which leaned against the wall of the building, leaving open spaces at both sides thereof; and that when the cellarway was in use, this strip of slats was picked up and set to one side against the building. He further testified that at the time of the execution of the lease, supra, this hole and covering were in this condition; and that he had known the premises for many years, and that the condition then existing had existed for at least six or seven years. And his testimony on cross-examination makes it appear that this condition had existed for fourteen years. He was

asked by the court whether this covering of slats was flush with the sidewalk when in place, so that one could walk across it, and he said: "No, no, Judge . . . the covering leaned against the wall like that (illustrating) . . . of course these sides were open." Being recalled as a witness for defendants, he testified, on cross-examination of plaintiff's counsel, that this strip of slats was light, and could be very readily picked up or moved about.

The ordinance pleaded in the petition was duly introduced in evidence by plaintiff.

One Bosche, who was president of the Gunn Fruit Company at the time of plaintiff's injury, was called as a witness for defendants. He fully described the covering provided by these appellants for this opening, and which the lessees had continued to use, as consisting of a number of slats or boards, each about three inches in width, with spaces between them, and which were nailed to "about three strips running the other way." He testified that when the covering was in place it did not lay flat over the opening but leaned against the wall of the building, the outer end thereof resting against the coping at the south side of the opening which extended about an inch above the sidewalk and which thus prevented the strip of slats from slipping and falling.

This witness testified that he saw this covering in place, above the opening, on the evening of plaintiff's injury, prior to the time when she is said to have fallen into the opening; that he observed this as he left the building about five o'clock, or a few minutes before or after that time; and that he heard of plaintiff's injury on the following day. On cross-examination he testified that this strip of slats was quite light, and could be "picked up" very easily and moved about; that it "had been used for years," and "had got very light during that time," the wood having become "well seasoned." His further testimony in this connection is as follows: Q. "Now, you saw the hole at five o'clock?" A. "Yes, sir." Q. "Five minutes

after or five minutes before five?" A. "Yes, sir."
Q. "Are you sure of that time—that is, are you—"
A. "Well, I am sure within five minutes." Q. "So
that between five o'clock and five thirty the covering
might have been removed by someone else?" A. "It
could have been done." Q. "That is, passing along
there, someone might have pushed it out of the way?"
A. "It is possible." Q. "Between five and five thirty
o'clock?" Upon objection to this as calling for con-
clusion the court merely said: "It is self evident;"
defendants saving no exception.

One Saporita, an employee of the Gunn Fruit
Company at the time of plaintiff's injury testified to
the effect that he put this strip of slats in its accus-
tomed position, above the opening, on the evening in
question, prior to the time at which plaintiff is said
to have been injured.

The other testimony in the case is not of conse-
quence on this appeal.

It is argued for appellants that the trial court
erred in refusing to peremptorily direct a verdict for
them; but we think that this insistence is without
merit. The case, in this court, fell by assignment to
our Presiding Judge, who has written an opinion
therein, holding that the demurrer to the evidence
should have been sustained as to these appellants;
but the other members of the court are unable to con-
cur in that view of the case, and it has fallen to the
lot of the writer to prepare the majority opinion.

Obviously the evidence shows, without dispute, that
the defendant owners, these appellants, wholly failed
to comply with the provisions of the ordinance, supra.
This strip of slats nailed together, which did not fit
over the opening at all, flush with the street, but leaned
at an angle against the south wall of the building, leav-
ing an opening on both sides thereof, was no compliance
with the ordinance whatsoever. And the evidence
shows that this condition existed at the time of the
letting to the lessee, the Gunn Fruit Company, and
that it had existed for a great many years prior there-

to. Appellants say, that "where things, harmless in themselves become dangerous merely by the manner of their use by a tenant in possession, the landlord is not generally called upon to respond for injuries resulting from such use" (Eyre v. Jordan, 111 Mo. 428, 19 S. W. 1095); and that "a coal hole or other like opening in a sidewalk properly constructed and covered is not a nuisance *per se.*" [Stoetzele v. Swearingen, 90 Mo. App. 588.] But this is quite beside the case, for the evidence clearly shows a violation of an ordinance by the defendant owners, constituting negligence *per se.* [Ryan v. Kansas City, 232 Mo. 471, 134 S. W. 566, 585; Perrigo v. City of St. Louis, 185 Mo. 274, 84 S. W. 30.] And the dangerous condition of this opening in the sidewalk, thus wrongfully allowed by appellants to prevail, was a menace to pedestrians who might pass along the highway, and constituted a nuisance. This nuisance, as said, existed at the time of the letting and long prior thereto. And it is well settled that "if the owner of the abutting property constructs and maintains a nuisance adjacent to the highway, and lets such property in this condition—i. e. with the nuisance thereon— . . . and such tenant continues to maintain and suffer the nuisance as before, both the proprietor and tenant are liable for such injuries as may befall one passing along the highway, as a result of their negligence in omitting to exercise ordinary care to guard or render secure the passage. [See Buesching v. Gas Light Co., 73 Mo. 219; Grogan v. Broadway Foundry Co., 87 Mo. 321; 1 Thompson on Negligence, sec. 1159.]" [O'Brien v. Heman, 191 Mo. App. 477, l. c. 498, 499, 177 S. W. 805.]

In Fehlhauer v. City of St. Louis, 178 Mo. 635, l. c. 646, 77 S. W. 843, it is said: "The rule in such cases is that the 'landlord's liabilities in respect of possession, are in general suspended as soon as the tenant commences his occupation. But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition

at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease. ' [Taylor, Landlord and Tenant (8 Ed.), sec. 174.]' "

In this connection we may say that Bender v. Weber, 250 Mo. 551, 157 S. W. 570, and cases of that character, are here without application. In the Bender case the plaintiff was an invitee of the tenant of the premises, and sued the landlord, the owner, for injuries received by her by reason of falling down certain steps into a cellarway leading to the basement of the building. The duty or obligation of a landlord to a tenant, or invitees of the latter, is quite different from the duty or obligation owing by him to travellers upon the public highway adjoining the landlord's premises. In the Bender case, supra, it is said:

"Therefore it will not do to indiscriminately invoke the principles and doctrines announced in cases where traps are laid or dangerous openings are left so close to the line of travel on the public highway that travellers thereon are likely to stumble into them. . . . The doctrine and reasoning of such cases, then, as Smith v. St. Joseph, 45 Mo. 449; Bassett v. St. Joseph, 53 Mo. 290; Buesching v. Gas Light Co., 73 Mo. 219; Fehlhauer v. St. Louis, 178 Mo. 635, 77 S. W. 843; Benton v. St. Louis, 248 Mo. 98, 154 S. W. 473, . . . furnish little or no aid in this case. In so far as those cases, or any of them discuss and announce the joint duty of owners and tenants, or the separate duty of either of them, or of municipalities to persons travelling on public highways, they are not at first blush, or at bottom, applicable to the instant case on the question up."

In like manner, and by the same reasoning, cases like that of Bender v. Weber are not applicable in a case such as that before us which involves the question of the landlord's liability to a traveller upon the highway passing along the sidewalk on which the owner's premises abut.

Rose v. Gunn Fruit Co.

It is entirely clear that these appellants are liable to respond in damages for injuries proximately resulting from their negligence in failing to comply with the ordinance, supra, whereby a dangerous condition was created and allowed to prevail in this sidewalk, constituting a nuisance, and which was adopted and maintained by the tenant. Appellants can escape liability, if at all, only upon the ground that plaintiff's injuries did not proximately result from the said negligence of appellants, but from the negligence alone of the tenant in failing to keep this opening covered or protected by this makeshift strip of slats.

There is authority for the proposition that appellants, having violated the ordinance in failing to provide a lawful covering for this opening, would become liable to one falling into the opening by reason of the fact that the cover provided by them was temporarily left off by the tenant. [See Anderson v. Diekie, 1 Robertson (N. Y.) 238.] And in this connection see also City of St. Louis v. Miller, 78 Mo. App. 67. But we shall not put our opinion upon this ground. There is, in fact, no direct evidence that the lessee left this strip of slats off of the opening at the time in question, i. e. that the lessee, or its agents or servants, set the thing aside, leaving the opening entirely exposed. On the contrary all of the positive testimony in the record touching the matter is that this strip of slats was put in its accustomed place upon that evening, prior to plaintiff's injury. This strip of slats, however, was a light object, fastened in no way, but merely placed with the lower end against the flagging at the south side of the opening and the other end leaning against the wall of the building. It afforded a slanting covering directly over the hole, but left the latter exposed at both sides of the slats. If it can be said to have furnished, when in position, any substantial protection against the danger lurking in this sidewalk, it was so light that it could be easily pushed, or otherwise moved aside by anyone passing over this portion of the sidewalk, or by any intermeddler. This fully appears

without reckoning with the statements of the witness Bosche touching the matter, supra. And when all of the facts and circumstances of the case are considered, we think that a jury could, with entire propriety, find that the fact that this makeshift strip of slats was not in position above the opening was due to the negligence of appellants in failing to equip the place with a cover required by the ordinance, reasonably safe and secure, and which could not be readily pushed or thrust aside; or that plaintiff's injury resulted, not alone from an intervening, independent cause, but from the negligence of appellants combined with an intervening cause, the result being one which should reasonably have been foreseen or anticipated by appellants as a thing likely to occur by reason of their original negligence.

In Harrison v. Electric Co., 195 Mo. 606, it is said:

"Many other cases in this State might be cited illustrative of the rule in reference to concurrent negligence constituting proximate cause, but the foregoing cases are sufficient to demonstrate that if a defendant is negligent and his negligence combines with that of another, or with any other · independent, intervening cause, he is liable although his negligence was not the sole negligence or the sole proximate cause, and although his negligence without such other independent, intervening cause would not have produced the injury." [Harrison v. K. C. Electric Co., 195 Mo. 606, l. c. 625, 93 S. W. 951; Buckner v. Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766.]

In Daneschocky v. Sieble, 195 Mo. App. 470, l. c. 474, 475, 193 S. W. 966, this doctrine is well expounded, we think, by ELLISON, J., as follows:

"When the rule is stated in its full breadth, viz., that a separate intervening cause will break the line of causation leading out from the first cause and, in law, absolve the first cause from all responsibility, it is the statement of a mere arbitrary rule, which in practical application, would lead to results opposed to sound reason. The rule should always be accompanied by the

qualification, "that if the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury." [Nickey v. Steuder, 164 Ind. 189, 192.]

"We think that where the character of the first wrong is such that an injury will naturally, or probably, result, though it is a result following another cause which has intervened, it is a result that should reasonably have been foreseen or anticipated by the first wrongdoer and he should be held liable. An intervening cause should not be held to excuse the first cause, unless such intervening cause is one so unusual and so improbable as not to be reasonably foreseen or considered by an ordinarily prudent man. Otherwise, one could say, 'I will commit this negligent wrong, though I know, or believe, it will probably cause another negligent wrongdoer—another intervening independent agency, to commit an injury.'"

Indeed appellants, we think, ought reasonably to have foreseen or anticipated that their negligence in leaving this deadly pitfall in the street, unprotected except by this light strip of slats leaning at an angle against the building, in flagrant violation of the ordinance, would be likely to result in injury of some character to one passing over this portion of the sidewalk, particularly at night. As the strip of slats extending some considerable distance above the sidewalk, inclined against the building, one would be likely to trip and fall over it, or to run against it and step into the cellar opening which was totally unguarded at the east and the west sides thereof; and if a pedestrian should run against the strip of slats and push it to one side, though escaping injury, another traveller might then readily fall into the opening.

"The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to

have foreseen the very injury complained of; but he
may be held liable for anything which, after the injury
is complete, appears to have been a natural and
probable consequence of his act or omission.'' [Buck-
ner v. Horse & Mule Co., supra; Fishburn v. Railroad,
127 Iowa, l. c. 492; Harrison v. K. C. Electric Co.,
supra; Benjamin v. Street Railway, 133 Mo. 274, l.
c. 291, 34 S. W. 590; Dean v. Railroad, 199 Mo. l. c.
411, 97 S. W. 910; Obermeyer v. Logeman Chair Co.,
229 Mo. 97, 111, 129 S. W. 209; Daneschocky v.
Seible, supra, and further authorities there cited.]

We are of the opinion that the case made by plain-
tiff, as against these appellants, was one for the jury,
and that the trial court consequently committed no error
in refusing to peremptorily direct a verdict for ap-
pellants.

## II.

Plaintiff's first instruction, the main instruc-
tion for plaintiff, purporting to cover the case and
directing a verdict, is challenged by appellants as being
prejudicially erroneous. This instruction, in substance,
told the jury that if they found from the evidence that
on December 17, 1914, and for many years prior there-
to, Carr street, at and near its intersection with Third
Street, was a public street in said city, and further
found and believed from the evidence ''that defendants
on or about December 17, 1914, and for a long time
prior thereto, owned, controlled and used a certain
building and property located at the northwest corner
of Third and Carr streets, and in connection with
which property and building they provided, used and
maintained on the Carr street side thereof, an opening
or cellarway, which was used and maintained by de-
fendants as a means of ingress and egress to the cellar
or basement of said building or property,'' and that
the opening or cellarway ''extended out over the
travelled part of said sidewalk,'' then ''it was the
duty of the defendants to provide and maintain over

said opening or cellarway a wood or iron cover or grating set in flagging, even with the surface of the sidewalk, and constructed and maintained so that no lock, hinge, nor any fastening shall project above the sidewalk, and that said cover or grating shall be so secured in such a reasonably safe manner as to prevent accident to anyone passing over it;" and that if the jury further found and believed from the evidence that on or about December 17, 1914, at about 5:30 P. M., plaintiff was proceeding over and along the sidewalk at that point, and stepped or fell into the opening or cellarway mentioned in the evidence, and was thereby injured, and if they further found "that defendants failed to provide and maintain over said opening or cellarway a wood or iron cover or grating set in flagging, even with the surface of the sidewalk, and secured in a reasonably safe and secure manner, and as a direct result thereof, plaintiff was caused to step or fall into said opening or cellarway and was thereby injured," then to find a verdict for plaintiff, provided they found that plaintiff was in the exercise of ordinary care for her own safety at the time.

Obviously this instruction does not pursue the true theory upon which plaintiff's case must proceed against these appellants. It appears to proceed upon the theory that the jury may lawfully find that these defendant owners not only owned, but then "controlled and used" the premises, and "used and maintained this cellarway;" whereas the premises were then in the possession and control of the lessees, who "used and maintained" this entrance to the cellar from the sidewalk. Whether this feature of the instruction would alone require it to be condemned as prejudicially erroneous, we need not decide. The jury are thereby instructed, however, that it was the duty of "the defendants"—the appealing owners—to provide and *maintain* a covering over this opening such as is required by the ordinance and that if the jury found that they failed to do so, and "as a direct result thereof" plaintiff was injured, then to find a verdict for plaintiff.

This seems to carry with it the idea that appellants were required not only to provide a proper cover in' the first instance, but to maintain it, i. e. keep is over this opening.

While the instruction appears, on the one hand, to be faulty in thus commingling the duty of the landlords with that of the tenant or tenants, it fails, on the other hand, to require a finding of facts such as ought to be required in a case of this character, where it is sought to hold an owner liable for a nuisance, or a dangerous condition of this nature, existing at and prior to the time of the letting.

Respondent points out that appellants obtained an instruction to the effect that though the cover did not comply with the ordinance, yet if the jury found that plaintiff's injuries, if any, "resulted not because said covering to said areaway failed to conform to the city ordinance, but solely because said covering was left open by lessee or some representative of the lessee in possession of the premises or some other person other than the defendants Louisa Biddle and Katherine Biddle Barrett," then to return a verdict for said defendants. And it is argued that this instruction is too favorable to appellants; and that when this instruction and plaintiff's main instruction are considered together, any error in the latter could not be regarded as prejudicial. Whether defendant was entitled to this instruction given for it is not a question before us. But plaintiff's first instruction purported to cover the whole case, and directed a verdict, and as we understand the rule applicable in such cases, defendants' instruction could not, under the circumstances, serve to cure or render harmless the error in giving plaintiff's instruction in this form. [See State ex rel. Long v. Ellison, 272 Mo. 571, and cases there cited, 199 S. W. 984.]

Under the circumstances we do not see our way clear to hold that the giving of this instruction was nonprejudicial or harmless error.

It follows that the judgment must be reversed and the cause remanded. It is so ordered.

*Becker, J.*, concurs; *Reynolds, P. J.*, dissents from the first paragraph of the opinion, in a separate opinion filed, but concurs in the second paragraph thereof.

Argued and submitted Dec. 4th, 1918. Dissenting opinion filed February 4, 1919.

REYNOLDS, P. J. (dissenting).—It appears from the evidence in this case, that while plaintiff was walking along Carr Street, going west, she stepped into an opening or cellarway in the sidewalk, the cellar and opening appurtenant to the premises, and of the character described in the amended petition. It is in evidence that a cover was provided for this opening, consisting of wooden slats which completely covered it when closed and down over the opening, and which was without projecting hinges, lock or other fastenings. This covering had been in use from twelve to sixteen years and, according to the testimony, was there when the premises were leased to the Gunn Fruit Company. It was also in evidence that this accident was the first that had ever occurred in connection with anyone falling into this opening. This covering, instead of fitting even with the sidewalk, was raised at the back against the side or wall of the building. There is testimony for plaintiff that it was in place when the accident happened. There is very substantial evidence to the effect that plaintiff's injuries were severe and that she had incurred large expense in connection with her treatment, for which she was personally responsible, apart from her husband. There is also evidence to the effect that there were a lot of cedar or Christmas trees along the edge or curb of the sidewalk on the Carr Street side of the building, and possibly against the wall of the building, and that there was a passageway between them and the cellarway, possibly two and a half or three feet wide, and that immediately in front of the cellarway there was a clear space a couple of feet wide out to the street.

At the close of the testimony for plaintiff, defendants interposed a demurrer, which was overruled, defendants excepting.

At the instance of plaintiff the court gave an instruction, which, among other things, told the jury that if they found from the evidence that defendants, on or about December 17, 1914 and for a long time prior thereto, *"owned, controlled and used"* the building . . . "and in connection with which property or building they *provided, used and maintained on the Carr Street side* thereof, an opening or cellarway, *which was used and maintained by defendants* as a means of ingress and egress to the cellar or basement of said building and property, . . . then the court instructs you that it was the duty of defendants to provide *and maintain over said opening or cellarway* a wood or oron cover or grating . . . *so secured* in such a reasonably safe manner as to prevent accident to anyone passing over it; . . . and if you further find and believe from the evidence that defendants failed to provide *and maintain over said opening or cellarway* a wood or iron cover or grating, . . . secured in a reasonably safe and secure manner, and as a direct result thereof, plaintiff was caused to step or fall into said opening or cellarway and was thereby injured, then your verdict will be for plaintiff and against the defendants," provided plaintiff was in the exercise of due care, etc. (Italics ours).

On the request of the defendants the court instructed the jury, among other things, that even if the covering was not such as required by the ordinance, yet if the jury found that the injuries to plaintiff resulted not from the failure of the cover to conform to the ordinance but solely because the covering was left open by the lessees by some representative of the lessees in possession, or some other person than defendants, then the jury will find in favor of the defendants.

The evidence showed beyond all question that defendants were either in the actual or constructive possession or control of the premises, nor did they use

them. They owned the premises, but had leased them for a term of five years sometime before this accident happened to the Gunn Fruit Company, and with their assent the unexpired term of that lease had been transferred to other parties, who were not defendants. So there is no evidence whatever to show, that in the sense implied by this first instruction given at the instance of plaintiff, the defendants controlled or used the property.

In that instruction the court told the jury that defendants were liable if they owned, controlled and used the building; in the one given for defendant the court told the jury they could not find for plaintiff unless they found that the cover was left open by the lessees or some representative of the lessees in possession of the premises, or some person other than the defendant. This is correct, but diametrically contrary to the one given for plaintiff. When that is so, there must be a reversal of the judgment and, ordinarily, a remander of the cause.

But looking further into the facts in evidence, and conceding it to be true that the cover, made of wooden slats, had been provided by the defendants to be used along with the building, and even conceding that it was defective and dangerous, it nowhere appears by any testimony that by reason of any defect in this cover plaintiff sustained the accident of which she complains. Plaintiff neither stepped on it nor was tripped up by any projection connected with it, nor did it break under her. She fell into the open hole or cellarway. While there was some testimony that this cover was over the cellarway at about the time plaintiff fell into the hole, or, more accurately, testimony by members, or employees, of the Fruit Company, that when they left the premises at about the time, but before the time plaintiff said she fell into the hole, this cover was in place over the opening, plaintiff herself makes no mention of any cover being there at the time; she hit no cover, but sustained a clean fall. Admit that the cover tilted toward the wall, she must have gotten under it and

between it and the level of the sidewalk and have gotten into the opening. This is impossible to be inferred from the evidence; an impossible physical fact. The only inference is, that the cover was not then in place over the opening. As said, even if not level but raised back against the wall of the building, when in place, it could not have been over the opening when plaintiff fell in. So the defect in the construction of the cover had nothing to do with the accident. It was the duty of the lessees to keep the premises free from any nuisance and they were responsible for the condition in which they were kept. The only inference from the testimony is that the accident resulted from the fact that the lessees in possession left this cover off at the time, or that it had become displaced. That was the act and fault of the lessees and not of the defendants, owners or lessors, who had nothing whatever to do with the use of the building or its appurtenances at the time. These were solely in the control of the lessees. For the manner of the use of the premises, defendants, as the owners, as lessors, are in no manner responsible.

Our Supreme Court has said, in Kilroy v. City of St. Louis et al., 242 Mo. 79, l. c. 86, 145 S. W. 769.

"Whether or not a party is in possession is often a mixed question of law and fact. The owner of a house is in contemplation of law for certain purposes in possession, although it is actually occupied by his tenant. But when the inquiry is, whose duty was it to keep the premises in order? the answer is, it was his duty who was in actual occupancy with immediate control of the same."

We are not troubled here with any mixed question of law and of fact. There is no question of fact as to who was in the possession and control of the premises at the time. It was the lessees, not the owners. It was the duty of the lessees, as a matter of law, to keep the premises free from a nuisance or traps to the unwary. That same law is announced by our Supreme Court in Bender v. Weber, 250 Mo. 551, 157 S. W. 570. There it is said (l. c. 562): "In the next place, there is a

doctrine of the law hinging on the express terms of leases, whereby the duty to make repairs or keep tenements fit is taken from the shoulders of the tenant or occupier (where it generally belongs, Ward v. Fagin, 101 Mo. 669) and is put upon those of the landlord, and wherein the breach of that duty has been sometimes (but not always) allowed some significance as *lex privata* in determining the liability of the landlord to the tenant or his guests or customers for injuries.'' In the Bender case, supra, the terms of the lease between the defendants and tenants was not before the court, nor did the petition count on a breach of any contractual duty springing from the verbiage or provisions of the lease itself, hence the court says, that the doctrine above stated and cases discussing it ''are afield.'' Again, on page 563 of the above case, it is said: ''So there is a well established general doctrine that may be guardedly stated after this fashion: It is the tenant, not the landlord, who has surrendered domination and control, who is liable for the negligence maintenance of the premises. In the case at bar the lease introduced by plaintiff, is before us. It is a lease for a term of five years and it is provided in it that the premises described and here involved are ''to be used by said lessees, for the carrying on a commission business, or for any other legitimate mercantile business not contrary to law or ordinance, . . . for and during the term of five (5) years thereafter.'' The rental is stated, and failure to pay it is a cause of forfeiture. It is provided that the lease is not assignable, under penalty of forfeiture, without the written assent of the leasor, and that at the expiration of the lease, or termination of the term thereby created, the premises are to be surrendered unto the lessors their assigns, etc., in as good condition as received, only excepting natural wear and decay, or the act of God, or the effects of accidental fire, and that all inside repairs deemed necessary by the lessee are to be made at the expense of the lessees, with the consent of the lessor, and not otherwise. It is further provided in the lease: ''The said premises shall be

kept in good order and repair, and free from any nuisance or filth, at the expense of said lessees, and shall not be used by said lessees, or by any person occupying the same, in any manner or for any purpose prohibited by any law or ordinance, or by the terms ᴸereof.'' So there is nothing in this lease that takes the duty to make repairs ''from the shoulders of the tenant or occupier . . . and is put upon those of the landlord.'' Very clearly this lease puts the ˙possession, care and control of the premises in the possession of the lessees, who are liable, not only under the terms of the lease, as implied, but by operation of law, for their maintenance in such a manner as not to create a nuisance, and for damages sustained by reason of failure so to do.

The section of the city ordinance pleaded and in evidence (section 1292, R. C. 1912) has no application here. It provides that the cover shall be ''secured in such manner as to prevent accident to anyone passing over it.'' That applies only when the cover is in place. It does not mean that the opening is always to be covered. Such an interpretation would render the cellar always inaccessible from the pavement. This section as well as ˙the following are sections 1213˙ and 1214, Rombauer's.

There is another section of the same ordinance (section 1293, Revised Code 1912, p. 816), which does look to the use of the cover, and that section provides: ''Whosoever in this city shall keep or leave open any cellar door or grating of any vault on any highway, thoroughfare or sidewalk, or shall suffer any such door or grating belonging to premises occupied by him to be in an insecure position whereby passengers may be in danger of falling into a cellar or vault, shall be deemed guilty of a misdemeanor.'' This section is neither pleaded nor in evidence and is not before us. We notice it only as a recognition by the city of the very point we have before us, namely, when a cover is provided by the landlord or tenant, it is the duty of the occupier of. the

premises to see that the opening to the vault or cellar is not allowed to be or remain in such position or condition as to endanger those having occasion to pass over the street.

While I dissent from the first paragraph of the opinion of my Brother Allen, for the reasons here set out, I concur in the second paragraph.